TO BE PUBLISHED IN THE OFFICIAL REPORTS

OFFICE OF THE ATTORNEY GENERAL
State of California

XAVIER BECERRA
Attorney General

_____

|  |  |  |
|---|---|---|
| OPINION | : | No. 18-301 |
| of | : | April 19, 2019 |
| XAVIER BECERRA<br>Attorney General | : | |
| CATHERINE BIDART<br>Deputy Attorney General | : | |

_____

Proposed relator, MIGUEL SANCHEZ, requests leave to sue proposed defendant LETICIA PRADO in quo warranto to remove her from the public office of member of the Governing Board of the Vineland School District (School District trustee) on the ground that she has assumed a second, incompatible public office as a director of the Lamont Public Utility District (Utility District trustee), in violation of the ban on simultaneously holding incompatible offices set forth in Government Code section 1099.

CONCLUSION

Leave to sue is GRANTED because we find that a substantial issue of fact or law exists as to whether the offices of School District trustee and Utility District trustee are incompatible and cannot be held at the same time under Government Code section 1099, and therefore whether proposed defendant LETICIA PRADO has forfeited and must vacate her office of School District trustee.

1

18-301

ANALYSIS

We are asked to grant leave to sue in quo warranto[1] to remove proposed defendant Leticia Prado from the office of School District trustee on the ground that she simultaneously holds the incompatible office of Utility District trustee.[2]  As we will explain, the Utility District's power to supply water and sewer services to the School District creates a substantial issue of fact or law as to whether the offices are incompatible, warranting leave to sue.

In December 2016, shortly after Ms. Prado assumed office as School District trustee, she assumed the additional office of Utility District trustee.[3]  The School District has two schools, at least one of which is within the service area of the Utility District.[4]  The Utility District provides water and sewer services, but such a district may also provide a variety of other services ranging from fire protection to cable television.[5]

---

[1] Latin for "by what authority," quo warranto was originally a writ used by English monarchs to challenge a royal subject's claim to an office or franchise supposedly granted by the Crown.  (California Attorney General's Office, Quo Warranto (1990), p. 1, available at <https://oag.ca.gov/sites/all/files/agweb/pdfs/ag_opinions/quo-warranto-guidelines.pdf> [as of April 18, 2019].)  Quo warranto has evolved into a statutory proceeding to determine, among other things, whether a person is entitled to hold a particular public office.  (*Id*. at p. 3.)

[2] Upon our inquiry, Ms. Prado stated her intent to oppose the present quo warranto application, but has not in fact submitted any opposition.  Our decision is therefore based on proposed relator's unopposed application and applicable law.

[3] We are informed that Ms. Prado also held these offices, which have four-year terms, in the immediately preceding term.  She was reelected to both offices in November of 2016, sworn into office as School District trustee on December 12, 2016, and sworn into office as Utility District trustee on December 13, 2016.

[4] See <http://vineland.k12.ca.us/history/> (Vineland School District is composed of Vineland School and Sunset School) (as of April 18, 2019); <http://lpud.org/service-areas/> (Utility District's service area "includes a non-contiguous area, comprising approximately 80 acres [that] consists of the property occupied by Sunset School and the adjacent residential properties") (as of April 18, 2019).

[5] Pub. Util. Code, §§ 16461, 16463, 16463.5; *Cequel III Communications I, LLC v. Local Agency Formation Com. of Nevada County* (2007) 149 Cal.App.4th 310, 317; see <http://lpud.org/water/> (describing Utility District's water services) (as of April 18, 2019); <http://lpud.org/sewer/> (describing Utility District's sewer services) (as of April 18, 2019).  Records submitted by the proposed relator to our office show that the Vineland

2

Government Code section 1099 codifies the common law prohibition against holding incompatible public offices, and the common law prohibition continues to inform and govern application of the statutory prohibition.[6] An office is incompatible with another office if one of them has supervisory, auditory, removal, or veto power over the other.[7] Incompatibility also exists where there is a potential for a significant clash of duties or loyalties between the offices in light of their respective powers and jurisdiction.[8] Public policy considerations may also require a finding of incompatibility.[9] However, holding incompatible offices is nevertheless permitted where it is compelled or expressly authorized by law.[10]

Upon assuming a public office that is incompatible with one that the officer already holds, the officer is "deemed to have forfeited the first office upon acceding to the second."[11] If the officer does not vacate the first office, an action to enforce the forfeiture may exist under Code of Civil Procedure section 803.[12] This section authorizes a person, with permission from the Attorney General, to bring a quo warranto lawsuit (in the name of the People of the State of California) "against any person who usurps, intrudes into, or unlawfully holds or exercises any public office . . . ."[13]

---

School District has made payments for two accounts with the Utility District. That might indicate that the School District receives water or sewer services, or both, from the Utility District for both its schools, but we see no further evidence disclosing that. Importantly, however, at least one of the two schools is clearly within the Utility District's service area. (See <http://lpud.org/service-areas/> [as of April 18, 2019].)

[6] Gov. Code, § 1099, subd. (f); Stats. 2005, ch. 254, § 2 ("Nothing in this act is intended to expand or contract the common law rule prohibiting an individual from holding incompatible public offices. It is intended that courts interpreting this act shall be guided by judicial and administrative precedent concerning incompatible public offices developed under the common law").

[7] Gov. Code, § 1099, subd. (a)(1).

[8] Gov. Code, § 1099, subd. (a)(2).

[9] Gov. Code, § 1099, subd. (a)(3).

[10] Gov. Code, § 1099, subd. (a). The simultaneous holding of the two offices at issue here is not compelled or expressly authorized by law.

[11] Gov. Code, § 1099, subd. (b).

[12] Gov. Code, § 1099, subd. (b).

[13] Code Civ. Proc., § 803. The statute also authorizes the Attorney General to bring such a suit directly.

Seeing that quo warranto is the applicable remedy, we must decide whether to grant leave to sue.[14] In doing so, we do not endeavor to make a conclusive determination on the merits.[15] Rather, we assess whether a substantial issue of fact or law exists warranting judicial resolution,[16] and, if so, whether allowing the proposed action to proceed would serve the overall public interest.[17]

**Substantial Issue as to Incompatibility of Offices**

In light of the incompatible-offices ban, does simultaneous service as School District trustee and Utility District trustee create a substantial issue of fact or law warranting judicial resolution? In looking at potential grounds for incompatibility we observe that neither of these public offices[18] holds supervisory, auditory, removal, or veto power over the other. Thus, we must look to the relevant duties and powers of the two offices to discern whether holding them at the same time risks a significant clash of duties or loyalties.[19]

A school district, acting through its trustees, is responsible for obtaining water and sewer services for the benefit of its constituent schools, students, and employees.[20] A

---

[14] See *Rando v. Harris* (2014) 228 Cal.App.4th 868, 879.

[15] 87 Ops.Cal.Atty.Gen. 30, 31 (2004) (explaining that we make no final judgment on the merits but "a substantial showing must be made before we will authorize a judicial challenge to a person's right to hold public office," quoting 84 Ops.Cal.Atty.Gen. 154, 156 (2001)); 73 Ops.Cal.Atty.Gen. 354, 354-355 (1990) (stating that it is not within the Attorney General's province "to determine which party should or is likely to prevail").

[16] *Rando v. Harris*, *supra*, 228 Cal.App.4th at p. 879.

[17] *Ibid*.

[18] We have previously determined, in separate opinions, that a school district trustee and a utility district trustee are "public offices" for purposes of the ban (see 73 Ops.Cal.Atty.Gen. 268, 270 (1990) (school district); 68 Ops.Cal.Atty.Gen. 240, 241 (1985) (same); 64 Ops.Cal.Atty.Gen. 137, 137-138 (1981) (public utility district)), and see no reason to revisit that analysis.

[19] Because our analysis will demonstrate the potential for a significant clash of duties or loyalties, thereby providing sufficient grounds upon which to grant leave to sue, we do not separately address whether public policy considerations might also provide a basis for doing so.

[20] 85 Ops.Cal.Atty.Gen. 60, 61 (2002) ("The board of trustees of a school district has the responsibility of obtaining necessary water supplies and sewage disposal services for the district," citing Education Code sections 17556, 17569, 17577, which have not since

4

utility district, acting through its trustees, is empowered to supply those services.[21] Indeed, the Utility District here supplies water and sewer services.[22]

We have previously determined that a person simultaneously holding offices with similar duties would potentially face a significant clash of duties or loyalties. Though our prior opinions did not arise in the precise context of school district trustee and utility district trustee, they arose in a similar context where a school district trustee simultaneously held office with an entity empowered to provide that school district with water or sewer services.[23] In deciding a similar issue in the quo warranto context, we found a substantial issue of fact or law warranted the granting of leave to sue.[24] Further, when asked to conclude *outright* whether the offices were incompatible (i.e., not merely whether *a substantial issue exists* as to their incompatibility), we determined that the incompatible-offices ban prohibits simultaneously holding such offices.[25]

Here, we are asked for the first time to grant leave to sue where the entity empowered to supply the school district with water or sewer services is a utility district. We think the analysis in our prior opinions applies here and illustrates a potential for a significant clash of duties or loyalties between the offices of School District trustee and Utility District trustee.

---

been amended).

[21] Pub. Util. Code, §§ 16031, 16461.

[22] See <http://lpud.org/water/> (describing Utility District's water services) (as of April 18, 2019); <http://lpud.org/sewer/> (describing Utility District's sewer services) (as of April 18, 2019).

[23] See, e.g., 85 Ops.Cal.Atty.Gen., *supra*, at p. 60 (offices with school district and water district incompatible); 75 Ops.Cal.Atty.Gen. 112, 113 (1992) (granting leave to sue to test whether offices with school district and community services district are incompatible); 73 Ops.Cal.Atty.Gen., *supra*, at pp. 268, 272 (granting leave to sue to test whether offices with school district and water district are incompatible); 73 Ops.Cal.Atty.Gen. 183, 183, 188 (1990) (granting leave to sue to test whether offices with school district and community services district are incompatible); 65 Ops.Cal.Atty.Gen. 606, 607, 609 (1982) (offices of school district and city council are incompatible because, among other things, city and school are authorized to contract with each other for sewer facilities).

[24] See, e.g. 75 Ops.Cal.Atty.Gen., *supra*, at pp. 113, 115; 73 Ops.Cal.Atty.Gen., *supra* at pp. 268, 272; 73 Ops.Cal.Atty.Gen., *supra*, at pp. 183-188.

[25] See, e.g., 85 Ops.Cal.Atty.Gen., *supra*, at p. 60; 65 Ops.Cal.Atty.Gen., *supra*, at pp. 607, 609.

5

For instance, in 2002, we concluded that two public offices within a school district and water district were incompatible, even though there was no direct contractual relationship between the two entities.[26] The school used its own septic tanks for sewage and mostly used its own wells for irrigation water, but obtained non-irrigation water from agencies supplied by the water district.[27] We found that the possibility of a decision by the school district to abandon its wells and instead obtain irrigation water supplied indirectly by the water district created a clash of loyalties.[28] We found a similar clash based on the possible decision by the school district to abandon its septic tanks and instead use the water district's sewer facilities.[29] We recognized that these decisions would affect the school district and water district in different ways, and that what may be in the best interests of one might not be in the best interests of the other.[30] We also identified further potential clashes, including that the water district set the wholesale water rate that is passed on to the school district by the retail water agencies.[31]

And in 1992 and 1990, we granted leave to sue in quo warranto based on the incompatibility-offices ban in the context of a school district trustee and community services district officer.[32] Our 1992 opinion provided in relevant part:

> Whether the two offices at issue are incompatible need not be extensively discussed. The precise question was analyzed recently in 73 Ops.Cal.Atty.Gen. 183 (1990). In [that] opinion, a community services district supplied water to a school district. We analyzed the duties of the community services district director with respect to (1) determining water rates for various users, (2) taking action to collect unpaid charges, (3) assessing penalties, (4) entering into contracts with other public entities for the installation of requisite water facilities, and (5) imposing capital facilities fees on water users and contracts with respect thereto. We also pointed out that the same person, as a school district trustee, would be involved in matters such as (1) whether to pay for or contest charges for water services, which if unpaid could become a lien upon school district property,

---

[26] 85 Ops.Cal.Atty.Gen., *supra*, at p. 60.

[27] 85 Ops.Cal.Atty.Gen., *supra*, at p. 60.

[28] 85 Ops.Cal.Atty.Gen., *supra*, at p. 62.

[29] 85 Ops.Cal.Atty.Gen., *supra*, at p. 62.

[30] 85 Ops.Cal.Atty.Gen., *supra*, at p. 62.

[31] 85 Ops.Cal.Atty.Gen., *supra*, at p. 62.

[32] 75 Ops.Cal.Atty.Gen., *supra*, at p. 113; 73 Ops.Cal.Atty.Gen., *supra*, at p. 183.

6

and (2) any contract negotiations with the community services district over matters of mutual interest. *Based solely upon the fact that the community services district was supplying water to the school district, we concluded that leave to sue should be granted.* We stated [that] ". . . upon this function alone, without regard to the numerous others which may be assumed in the future, our determination that principal or important duties, functions, and responsibilities of the respective offices either are or might come into conflict."[33]

The 1992 opinion went on to conclude that the danger of a significant clash of loyalties was even greater than in the 1990 opinion because the community services district supplied both water and sewer services (rather than just water) to the school district.[34]

Here, the Utility District, similar to the entities discussed in our prior opinions, is authorized to provide the School District with water and sewer services.[35] While a utility district's authority to provide such services derives mostly from its own statutes[36] (rather than those specific to a community services district[37] or water district[38]), the duties and implications arising from such authority are sufficiently similar for purposes of the incompatible-offices ban.[39] For example, a utility district may charge and set rates; it may institute a special tax or assessment to pay for district operations; and, if a user's payment is delinquent, the district may take action to collect unpaid charges, which may be added

---

[33] 75 Ops.Cal.Atty.Gen., *supra*, at p. 115, italics added, quoting 73 Ops.Cal.Atty.Gen., *supra*, at p. 185.

[34] See 75 Ops.Cal.Atty.Gen., *supra*, at p. 116.

[35] See Pub. Util. Code, § 16461.

[36] *Ibid*.; Pub. Util. Code, § 15501 et seq. ("Public Utility District Act"); see also Pub. Util. Code, § 16407 (conferring utility district with same powers "as are conferred upon municipal water districts by Part 7 [commencing with Section 71851] and Part 8 [commencing with Section 72000] of Division 20 of the Water Code").

[37] See Gov. Code, § 61000 et seq. ("Community Services District Law"); see, e.g., Gov. Code, § 61100.

[38] See Wat. Code, § 71000 et seq. ("Municipal Water District Law of 1911"); see, e.g., Wat. Code, § 71610.

[39] See, e.g., 64 Ops.Cal.Atty.Gen., *supra*, at p. 140 (examining potential interactions between offices previously found incompatible and determining other offices likewise incompatible).

18-301

to an assessment and become a lien against the land.[40]  A dual officeholder's awareness that the School District is on the receiving end of such Utility District decisions may well create a significant conflict of loyalties.

In addition, our prior opinions recognized that a community services district could provide more than just water or sewer services (including, among others, fire protection, parks and recreation, street lighting, refuse disposal, and police protection), and concluded that "the question whether to add one or more community services district functions could place an individual who is both a community services district director and a school district trustee in a role of divided duties and loyalties."[41]

The same is true here.  In addition to water and sewer services, a utility district may provide an array of services including fire protection, recreation, light, power, heat, refuse disposal, transportation, and cable television, among other things.[42]  A decision by the School District to acquire further services from the Utility District could place a person who is a trustee of both entities in a role of divided duties and loyalties.

Furthermore, both the Utility District and School District have eminent domain power over the other for a superior purpose.[43]  On numerous occasions we have determined

---

[40] See, e.g., Pub. Util. Code, §§ 16467 (board must fix charges "for commodities or service furnished by any revenue producing utility as will pay all of the expenses of the government of the district, or such portion as the board determines justly apportionable to such utility"), 16468 ("[c]harges fixed by the board for commodities or services furnished may be made payable in advance"), 16469 (unpaid charges may be added to assessment), 16470 (charges added to assessment are lien against the land), 16485 (authorizing electricity stand-by charge), 16641.5 (authorizing special tax), 16651 (district sets tax rate of county assessment); see also Pub. Util. Code, §§ 16409 (authorizing higher rates for water service in specified circumstances), 16606 (rates charged subject to review by "qualified expert").

[41] 75 Ops.Cal.Atty.Gen., *supra*, at pp. 115-116; see also 73 Ops.Cal.Atty.Gen., *supra*, at p. 185.

[42] Pub. Util. Code, §§ 16461, 16463, 16463.5; *Cequel III Communications I, LLC v. Local Agency Formation Com. of Nevada County*, *supra*, 149 Cal.App.4th at p. 317.

[43] Code Civ. Proc., § 1240.610; Ed. Code, § 35270.5 (authorizing eminent domain by school district); Pub. Util. Code, § 16404 (authorizing eminent domain by utility district).

8

that this common power of eminent domain creates a significant division of loyalties,[44] so we think this common power here must at least create the possibility of divided loyalties.

In sum, the duties and powers held by a School District trustee and Utility District trustee demonstrate that a person who holds both offices simultaneously could have divided loyalties in numerous situations arising from the conduct and operation of each district. What might be best for the School District might not be best for the Utility District, and vice versa. As only one potential significant clash of duties or loyalties needs to exist to render offices incompatible, we find a substantial issue of fact or law exists warranting judicial resolution.[45]

**Public Interest in Allowing Quo Warranto Action to Proceed**

We now turn to the question whether granting leave to sue would serve the public interest. "We generally view the need for judicial resolution of a substantial question of fact or law as a sufficient 'public purpose' to warrant granting leave to sue, absent countervailing circumstances not present here (such as pending litigation or shortness of time remaining in the term of office)."[46] And here specifically, allowing the suit in quo warranto would serve the public interest by ensuring that public officials avoid conflicting loyalties in performing their duties.

Based on all of the foregoing, the application for leave to sue in quo warranto is GRANTED.

*****

---

[44] See, e.g., 98 Ops.Cal.Atty.Gen. 94, 100 (2015); 76 Ops.Cal.Atty.Gen. 81, 85 (1993) (listing matters of mutual concern, including common right of eminent domain, that render "offices incompatible as a matter of law"); 75 Ops.Cal.Atty.Gen. 10, 13-14 (1992); 68 Ops.Cal.Atty.Gen. 171, 173-174 (1985).

[45] See Gov. Code, § 1099, subd. (a)(2); 73 Ops.Cal.Atty.Gen., *supra*, at p. 270 (stating that only one potential for significant clash is sufficient to render two offices incompatible).

[46] 98 Ops.Cal.Atty.Gen., *supra*, at p. 101.